<hr/>

## CHEATHAM VS. PHILLIPS.

The endorsement made by a land agent upon the plats of lands furnished him by the auditor, of the time at which he received them, is not to be treated as a solemn record that cannot be disputed or disproven, but it may be proven that he received them at a time different from that endorsed by him.

The swamp land commissioners could not delegate the power vested in them by the statutes to sell lands, and a sale by a sub-commissioner appointed by them, while they had power to sell, and ratified by them after their power to sell ceased; and the power vested in the land agent, was invalid.

The purchaser did not perfect his title under the act of 20th January, 1855, by surrendering the certificate issued to him by the commissioners, to the land agent, and taking out a new certificate of purchase, the land agent having in the meantime sold the land to another person. (*Deloach vs. Brownfield et al., ante.*)

### Appeal from Hempstead Circuit Court in Chancery.

Hon. LEN B. GREEN, Circuit Judge.

GALLAGHER and KNIGHT, for the appellant.

The equities of this case are all with appellant. He was the first purchaser. He purchased in good faith, according to the routine of the commissioners, and paid for the land in the same mode. He received his certificate of purchase, and took possession of the land—and this was done long prior to the inception of appellee's title.

Conceding that appellant's purchase was made before the land agent received the maps and plats—and it is conclusively established that it was—any irregularities that might have existed, in respect of that purchase, were cured by the statute of 20th January, 1855, which, in effect, confirms the title in the purchaser at that date, and provides for the land agent to issue a new certificate. The appellant's title was certainly made good and valid in equity against any subsequent purchaser. See, also, *Act of 17th February, 1859, and Opinion of Solicitor General*, to the effect that it confirms and makes good the purchase from the date thereof, by relation.

HEMPSTEAD, for appellee.

When the maps and plats were received by the land agent at Washington, the power of the swamp land commissioners to sell ceased at that precise point of time, and the land agent was invested with the exclusive power of sale. *Hempstead vs. The Auditor*, 16 *Ark.* 67; *Hempstead, Land Agent, vs. Underhill's Heirs*, 20 *Ark.* 354.

Every plat and map in the land agent's office is shown to be marked as follows: "*Mailed 20th, and received December 22d,*

1853. *B. F. Hempstead, Land Agent."* The reception of the maps and plats was an act pertaining to the duties of his office, and was known to him, and was official; and therefore *the indorsement of the time they were received,* is conclusive upon all persons, and cannot be impeached. That the land agent was required to do by law, and like the official return of an officer, it cannot be brought into question collaterally. It can only be impeached in a direct proceeding where the officer is a party. *Trigg vs. Lewis,* 3 *Litt.* 130, 132; *Wilson vs. Hurst's Ex'r.,* 1 *Peters C. C. R.* 441; 4 *Phil. Ev., Cowen & Hill's Notes, note* 602, *p.* 1847; *note* 741, *pp.* 1,083, 1,087.

The board of swamp land commissioners alone possessed the power of selling swamp lands up to the time of furnishing the maps and plats to the land agents. It was a power they could not delegate—and sub-commissioners are unknown to the law. 20 *Ark.* 354.

. Even if a sub-commissioner had authority to receive applications to purchase, the application and purchase must necessarily date from the time of its allowance by the board of commissioners, and could have no relation back to an anterior period. It was the board of commissioners, as a board consisting of three persons, that had the power to sell, in the respective districts, until the maps were furnished to the agent, and then the power ceased. *Hempstead vs. Auditor,* 16 *Ark.,* 68; *Hempstead, Land Agent, vs. Underhill's Heirs,* 20 *Ark.* 354.

The act of 17th February, 1859, does not apply to cases where the final title has issued; but only to cases where a certificate of purchase has been lawfully granted by the swamp land commissioners or agents, or any person acting under their authority ; and the holder desires to obtain a patent and holding certificate, and with which he may re-enter the land.

Mr. Chief Justice ENGLISH delivered the opinion of the court.

The subject of controversy in this suit is the east fractional half of the north-east fractional quarter of section 31, town-

ship 13 south, range 27 west, containing 59 87-100 acres, situated north of Swan Lake, in Hempstead county.

Phillips entered the land at the office of the swamp land agent for the Washington district, on the 22d of March, 1856, and obtained the deed of the state therefor, executed by Elias N. Conway, the governor, on the 27th of March, 1857.

Cheatham claims that he purchased the land of the board of swamp land commissioners on the 23d of December, 1853, and obtained from them a certificate of entry of that date; which he surrendered to the land agent of the Washington district on the 10th June, 1857, and received, in lieu thereof, a patent certificate, upon which the deed of the state was executed to him by John R. Hampton, acting governor, on the 15th of the same month.

Phillips filed a bill in the Hempstead circuit court to cancel the title of Cheatham, and confirm his own; and, from a decree rendered in his favor, Cheatham appealed to this court.

It is alleged in the bill that the maps and plats of the swamp lands, etc., embraced in the Washington district, were received by B. F. Hempstead, the land agent, on the 22d of December, 1853; and that his power to sell the lands commenced, and the power of the board of commissioners ceased, on that day; and that, consequently, the entry of Cheatham was illegal and void, and the subsequent purchase of Phillips valid.

The answer denies that the maps and plats were received by the agent on the 22d, but avers that they were received on the 24th of December, 1853.

*Jas. M. Killgore*, who succeeded Hempstead in the office of land agent, deposed that every plat in the office was marked thus: "Mailed 20th, and received December 22d, 1853—B. F. Hempstead, land agent."

It is insisted for Phillips that the law made it the duty of the land agent to indorse upon the plats the time at which they were received by him from the auditor, and that the indorsement, so made, is to be treated as a solemn record, the truth of which can neither be disputed nor disproven in this proceeding.

We find no statute making it the duty of the land agent to indorse upon the plats the time at which he received them, but inasmuch as his power to sell the lands, described in the plats, commenced at the time they came to his hands, (*Hempstead vs The Auditor*, 16 *Ark.*, 67,) it was proper that he should preserve in his office some evidence of the time of the occurrence of a fact of so much importance; and, doubtless, the usual and appropriate mode of doing this was by indorsement upon the plats.

But such indorsements are not *records* in the common law sense of the term, (2 *Bur. Law Dic.* 386; 2 *Bouv. Law Dic.* 428), and in the absence of any statute giving them the sanctity of solemn records, we cannot hold, upon principle, that they should have been treated, upon the hearing of this cause, as absolute and indisputable evidence of the time at which the land agent received the plats etc.

*Killgore* furthermore deposed that in the sale book, kept by Hempstead, preceding the entries of sales, there was a certificate made by him, that the maps and plats were received by him on the 24th day of December, 1853.

The depositions of several other witnesses conduce to prove that a box, which was understood to contain the maps and plats, reached Washington, in the stage from Little Rock, late in the evening of the 23d of December, 1853, and was left at the hotel, where it was seen as late as midnight. It was not positively proven that the box contained the maps and plats, but the facts stated by the witnesses induce the belief that it did; and considering them, in connection with the certificate made by the land agent in the sale book, we shall hold, for the purposes of this case, that the maps and plats were not received by him until the 24th of December. The deposition of Hempstead was not taken.

It was clearly proven, by depositions read upon the hearing, that Cheatham did not, as alleged in his answer, purchase the land in controversy of the board of swamp land commissioners,

on the 23d December, 1853, and obtain from them a certificate of entry on that day.

On the contrary, it appears that on the third of September, 1853, two of the commissioners appointed E. L. Pryor, of Hempstead county, a sub-commissioner to receive applications for the purchase of swamp lands situated within a certain district, by the following instrument:

"LITTLE ROCK, Sept. 3d, 1853.

"This is to certify that E. L. Pryor has this day been authorized by the board of swamp land commissioners to act as sub-commissioner for said board, and to do and perform such duties as are required by law from such board, in the district of lands assigned to him by J. D. Dixon, a member of the board.

L. J. REARDON,
JOHN McDANIEL,
*Swamp Land Com'rs.*"

By virtue of which appointment Pryor opened an office in the town of Washington, and received applications, through clerks employed by him in the office, for the purchase of lands, and certificates were issued to the applicants, in his name, in the following form:

"By virtue of my appointment, by the board of swamp land commissioners of the State of Arkansas, as sub-commissioner, and the powers by such appointment vested in me to act as their agent, and by delegation of their authority, to receive applications for the purchase of swamp lands in their names, I, E. L. Pryor, do hereby certify that ——— ———, of ——— county, has this day filed with me application addressed to said board of commissioners, for the entry and purchase of the following lands, viz: ———————, containing ——— acres, being part of the swamp and overflowed lands belonging to the State of Arkansas, and has this day paid to me, for said land, the sum of —— dollars, in swamp land scrip, issued on contracts made —— to the 12th January, 1853, the said land being —— than six miles from a navigable water course, which scrip I have received for said commissioners in payment for said lands, and on presentation

and surrender of this certificate to said board, the said commissioners will issue to said —— —— a certificate of this date, under their own hands in due form, that patents may issue to said —— —— for said lands.

E. L. PRYOR, *Sub-commissioner*
*of Swamp Land Commissioners.*"

At stated periods these applications to purchase lands, with the scrip paid in by the applicants, were forwarded to the office of the board of commissioners, at Helena, by Pryor, and certificates of entry issued by the board to the applicants, in lieu of the certificates given by Pryor.

The distance from Washington to Helena is from 225 to 250 miles, and it would ordinarily have taken a person traveling by stage, or private conveyance, five or six days to go from the former to the latter place.

On the 23d December, 1853, Cheatham applied at Pryor's office, in Washington, to purchase the land in controversy, paid the price in scrip to Daniel E. Williams, who was acting as Pryor's clerk, and a certificate in the form above copied, signed in blank by Pryor, and left in the office, was filled up to Cheatham, and a note of the application made by Williams in a book kept in the office for that purpose. The proof is not positive that Cheatham paid in the scrip at the time of his application, but the facts stated by the witnesses conduce to prove that he did.

*Pryor* deposed that for entries made before him, he settled with the board of commissioners monthly, or quarterly, and the applications made and scrip paid in were sent to them at Helena, by mail; and that from this course of business, the scrip of Cheatham, if he paid any at the time to Williams, could not have reached Helena before the 6th or 7th of January, 1854. That on the entries made before him, Pryor, and among which was that of Cheatham, W. E. Butts, as the secretary of the Board of Swamp Land Commissioners, at Helena, issued certificates in place of those issued by Pryor, and sent them to him at Washington, but he did not deliver them to the purchasers,

for the reason that Butts dated the certificates issued by him as of the day on which the applications and scrip came to his hands, instead of giving them the same date borne by the certificates issued by Pryor to the applicants.

That he, Pryor, considering this wrong, went to Helena himself, to return to Butts the certificates so by him issued, and dated, and to get him to issue others in their place (and Cheatham's among the number,) to bear the same date as those issued by Pryor; and Butts accordingly did so.

The certificate so obtained by Cheatham is the same that he surrendered on the 10th of June, 1857, and obtained in lieu thereof a patent certificate, on which he procured the deed of the State, from the acting governor, as above stated.

By the act of January 6th, 1851, the board of commissioners, provided for by the act, were vested with power to sell the swamp lands, for levee work, scrip, or cash, and to furnish purchasers with certificates of purchase and payment, upon which deeds were to be executed by the governor.

By the 3d section of the act of January 11th, 1851, the board were required to keep an office for the transaction of business at such point as a majority of them might designate, and it was made their duty to convene at such place once in every three months, and oftener, if necessary, for the proper dispatch of their duties, where a record of their joint proceedings was to be kept, and they were required to appoint a secretary, etc. By the 32d section of the act 12th January, 1853, the office of the board was located at Helena, where they were required to meet, as provided by previous acts, and discharge the duties imposed upon them, etc., with power to change the location of the office, etc.

The Swamp lands belonged to the State, by grant from Congress. The title to them was not in the commissioners; they derived their power to sell them from the statutes, and had to follow their requirements in order to make valid sales. There was no provision of the statutes authorizing the board of commissioners to appoint deputies or sub-commissioners, and to

delegate to them the power of selling the swamp lands, and they could not, without authority of law, transfer to other persons the power of sale entrusted by the legislature to them.

They, or two of them, thought proper for the convenience of the public, as they doubtless supposed, to appoint Pryor a sub-commissioner, to receive applications for the purchase of swamp lands at Washington, and to forward to the board such applications, with scrip, etc., received from the applicants, for their action. But they could not, and did not vest in him the power of sale. The sale could only be completed by them.

Cheatham made application to Pryor, (or his clerk), to purchase the land in question, on the 23d of December, 1853, paid over his scrip, and received a certificate of application, signed by Pryor. But this was not a sale of the land, for want of legal power in Pryor to make the sale. The action—the ratifying act —of the board of commissioners, in whom the power of selling was vested by law, was wanting to perfect the sale.

The application of Cheatham to purchase the land did not, perhaps, reach the office of the commissioners at Helena, before the 6th or 7th of January, 1854. It could not have reached there, if forwarded by Pryor on the 23d of December, before the 27th or 28th of the month; and when it arrived the power of the board of commissioners to sell the land had entirely ceased, Hempstead having received his maps and plats on the 24th of December, and the power of selling the land having vested in him. After the law transferred the power of selling the lands in his district from the commissioners to him, they could neither make a sale nor ratify and complete an unauthorized sale made by Pryor, if his receiving of Cheatham's scrip, and giving him a certificate, be treated as an attempted sale, instead of a mere application to purchase, to be transmitted to the commissioners.

It is insisted for Cheatham that he acquired a right to the land, under the act of the 20th January, 1855, by surrendering the certificate issued to him by the commissioners, to Killgore, the land agent, on the 10th of June, 1857, and obtaining from

him a patent certificate. But in the meantime, Hempstead, who preceded Killgore in office, had advertised and offered the land at public sale, and it failing to sell for want of a bidder, he permitted Phillips to enter it on the 22d of March, 1856, which fact Killgore states that he overlooked at the time he issued the patent certificate to Cheatham.

If Cheatham had obtained the patent certificate from the land agent before he sold the land to Phillips, it might perhaps have been treated as a valid sale to him, on the supposition that the scrip, which he had paid to Pryor for the land, and which was transmitted to the commissioners, had gone into the hands of the State. See *Deloach vs. Brownfield et al., ante.*

The decree must be affirmed.